Good morning, Your Honor. John Hamel of General Block for Commonwealth Edison Company. Good morning, Your Honors. Assistant Attorney General Evan Siegel on behalf of the people of the State of Illinois. Good morning, Your Honors. Special Assistant Attorney General John Kelleher on behalf of the Illinois Commerce Commission. Good morning. We had allotted 30 minutes for this case. We can be slightly flexible. It's the only case on the call this morning, but that's our goal. The time will be evenly divided between the parties, and the appellant may reserve a few minutes for rebuttal. With that, you may proceed whenever you're ready. Can I also say we are cognizant that we have held a motion taken with the case, so be able and feel free to address the merits of that motion in your remarks. Good morning. May it please the Court, Justice House, if I could just make sure I understand, you want me to try to get done in about 10, 15 minutes, something along those lines? That's our goal. If it takes... Aspirational. Aspirational. Well, thank you very much, Your Honors. What I'd like to focus on, then, is our view that the decisions at issue here really should fall on quite a few grounds. But for this morning's purposes, I'd like to focus on what we think is the first and foremost ground, and that is that the decisions should fall because of the statutory interpretation of Section 16125E of the Public Utilities Act. Let me underscore the reason why we believe it is particularly important for this Court to reverse these decisions is in all aspects, both when it comes to the statutory interpretation and to the decision on the waiver issue, the Commerce Commission has essentially rewritten the Public Utilities Act. And I'm going to cover that theme in a few different ways as we proceed. But turning to that first issue, the statutory analysis, I think all the parties agree that the statute needs to be interpreted by its plain text. Fundamental principle of law, there doesn't seem to be a dispute that that's the premise on which your decision should be based. However, the only party here that is actually arguing for a plain text application of the statute is Commonwealth Medicine. The statute couldn't What about the Commission? In their findings, it seemed like they argued that you were asking for an amendment, an effective amendment, by the inclusion of the word single. What's your response to that? I'm not asking for an effective amendment, Your Honor, because the words a continuous power interruption, the power interruption, and the power interruption are singular. The Commission Those words, couldn't they equally apply once it falls within the rubric to modifying that for each affected party, that is the single or the one event? That's essentially the argument I think that the Attorney General is trying to advance. And I don't see how the statute lends itself to that interpretation. Well, let me ask this, if I can. Taking your interpretation of the statute, if you hypothetically, Mr. Hamill, had a situation where the utility, different from what happened in this case clearly, abandoned their tree maintenance program, and during a storm, all sorts of trees hit the lines, causing all sorts of simultaneous or near simultaneous outages, would you consider that to be covered? No. However So it has to be the same tree hitting the same line that would cause 30,000 customers to be affected at one time? If we're talking about a tree, yes. But what maybe I'm reading into your question is whether there would be no possible grounds for relief somewhere else for those affected customers. There are other duties in the Public Utilities Act and other duties under ComEd's tariffs that would deal with the obligations that would arise in that type of situation. What we're talking about today is this statute. And what does this statute do? And Justice Epstein, we can look at this in any number of ways. We can start with the plain text. Respectfully, the word simultaneously is nowhere in this text. It's just not there. And it does make a material difference. We've given the examples in the briefs about a customer in Rockford whose power goes out for one reason and someone over here for another. Any way we cut it, plain text, the word simultaneous just isn't there and it has a material difference in the reading of the statute. Use all the other tools of statutory interpretation, which we don't think you need to get to. We don't think you need to use those other tools. But any one of those tools, any one of them, leads to the same conclusion. If we look at the absurd results, the weirdness in those different simultaneous outages being counted. We look at the legislative history. I don't know why no one in this case wants to grapple with the legislative history. But it's clear as to why this statute was adopted. It couldn't be clearer. But we don't want to look at that. We just want to add the word simultaneous, says the Commission. If we look at the other statutes that were considered at the time, they lead to the same result. If we look at the other uses of the word interruption in the statute and in the Commission's regulations, they say exactly what we're saying. If we look at what the industry interprets the word interruption to mean, it means exactly what we say. If we look at the overall regulatory scheme. Let's stop with that one, because there's a lot of time spent in the briefs on the interpretation of various people in the industry. Obviously, the people who vote on the legislation are not, in most cases, industry people. And the fact that a term may have meaning within the industry doesn't have a direct impact on how it should be interpreted in interpreting the language in the statute. It may be why someone in an industry might interpret the language that way at first blush. But you're not suggesting that the industry interpretation would override the legislative meaning that they try to write. I completely agree. I am not suggesting that. We're in the world. This conversation that we're having right now is in the world where we've moved beyond the plain text. So if we move beyond the plain text, which we don't think we should, then we're trying to find some meaning to this thing. And the word interruption has a statutory meaning. It does. It means one. If we look in the remaining provisions of Section 16125, if we scroll down a bit in the statute, you get down to 16125J. And that's a reporting duty. ComEd or any electric utility has to report the number of outages they have every year. And they talk about, in that part of the statute, an interruption that affects at least 10 or more customers. So we're in the same 16125, a few paragraphs down, and they're talking there about a single interruption. If we look, again, in the world of the legislature or in the regulations, I'm not dealing with the industry experts. If we look at the Commission's own regulations, it's 411.20 cited in the briefs, they have a definition of interruption. And, candidly, that definition says this isn't supposed to apply in 16125. We've talked about that in the briefs. It is there. That language is there. But that definition says it's a break in electrical flow. It's a singular. It's a single thing. So it also supports our interpretation. So what we struggle with is we're trying to find where is the counterpunch? Where is anything from any tool of statutory interpretation that says otherwise? And it's just not there. The Commission found that these interruptions of 30,000 people were caused by one failure. And that was a systemic failure to trim these tree branches. So in that sense, there was one cause for 30,000 people losing power. It was more than one tree, but there was one cause. And that was a systemic failure to trim the trees. And begging your pardon, Justice Huss, but that's not what they found. So when we look at their order, I would encourage the Court to go and look at their order again after the argument and struggle, try very hard to find where in the order they talk about tree contact at all as the governing cause. What they actually say in the order, they say, and I'm slightly paraphrasing, we agree that Comet has generally met its duties. They give the standard and they say, we agree. And then they say, but we disagree that a systematic compliance, which they say Comet did do, systematic compliance, we disagree that that carries your burden under the statute. So let's think why that should, I think, impress the appellate court as a problem. What that reasoning does, and we're in the waiver section now, right, we're discussing about the waiver. What that does, by saying Comet has complied with its duties, systematically complied, but then saying, well, that's not enough, and giving no other reasoning for why that's not enough, the Commission has just made, and this is the, here's the graph, the Commission has just made section 16125E1, that's a mouthful, that's the waiver section, has just made that the linchpin of the Public Utilities Act. Because now what has to happen, if that rationale is correct, what has to happen is utilities have to build systems for which they can't recover their costs under this statute, have to build systems that meet whatever unknown standard there is to prevent whatever they're saying happen, and they don't really even say what happened, about tree contact. In fact, Justice House, it wasn't until we wrote this brief that we got the Commission to commit in their briefing here that what they were really saying was about tree contact. So when you put all that together, it's a rewriting of the statute, and it's not grounded in the statute itself. Mr. Hamill, since you crossed over even momentarily into the waiver section, I have a question. I want to ask your opinion on relating to that. In your brief, after quoting the statute, you repeatedly talk about whether your client was entitled to the waiver. And indeed, even in my mind surprisingly, the Commission used the same language to refute that. I ask you about the sentence that says a waiver of the requirements of this section may be granted by the Commission, et cetera. And I guess implicit in your argument is that this is one of those circumstances where may should be read as shall. Is that correct? I think it has to be read as shall, but can I step back from the brief for a second to tell you how I get there? Sure. I think that the problem that you're raising about the word may, and I see it too, and it's not one that we really seem to have much disagreement about. Well, implicitly, but nobody expressly addresses it. That's all very true. The reason why I think, I think, we think, ComEd thinks that that problem doesn't exist is because this statute was not designed for this situation. And maybe you could turn around and say, well, okay, I get it, Hamill. You're talking about fires and the sorts of things that led the statute to be drafted in the first place. But if we're in the world where the statute more clearly applies, the stuff that led it to be passed in the first place, and I'm beyond the plain text, we're in the world of these massive fires that happen at these substations and so forth, then the difference between is there interruption and may, whether, should they give you a waiver, doesn't seem to me to be as acute. When we start applying the statute to, you know, I think the number was 5,000-something separate interruptions from the July storm alone, we start applying there, and suddenly that word may takes on that importance, where when we come and look at the statute for the first time, we say, holy cow, what do they mean about may? So I think that that problem, long way of saying, I think that that problem only becomes acute when you're trying to apply the statute where it doesn't apply. Well, but that obviously is your second issue. So assuming we resolve the first one adversely to you, it's something we have to deal with. Sure. And the problem I have with your supposition that may in this case mean shall, although there are some cases in some circumstances where courts have found it to be such, the problem is within this same subsection, shall is used right above it. And so you have a situation where the legislature is obviously considering the reach of may and reach of shall and have chosen circumstances in the same subsection where they attached one word rather than the other. So there's another way to look at it as well. Let's just say for the sake of argument, put on our lawyer's hats and we'll assume for the sake of argument. Ours are on. Yes. Yours are too. Yes. We'll assume it means may. Let's assume that there is discretion and that they had a choice, the commission had a choice, whether to grapple with the waiver issue. They're still going to be governing standards over the commission's decision making. It can't be arbitrary and capricious. It's got to be supported by substantial evidence. Their decision has to be supported by the manifest way to the evidence. When we look at what was done in this proceeding, and it has the feel almost like a jury argument, and I know that it has that feel when we're talking about the waiver, but all of the evidence, 100% of the evidence was supporting the waiver. Under any way we look at what was provided and presented below. There's no contrary argument. In fact, when you look at the briefs, when you look at the decision, I was saying to Justice House a minute ago, you can't see the bottom line of this decision until you get to the briefs. And then we look at what actually happened below. ComEd showed that there was a vegetation plan and that it followed it. ComEd showed by location, best as it could, the wind speeds over 60 miles an hour in the vast majority of places. What happened in these outages? It showed all of this through what was essentially. It seems like you got plenty of relief. I mean, the staff was arguing for a lot more, and the commission came back, and on every other storm, you guys were given a pass except for the July 11th storm. I mean, what happened here is you had the winter storm. You won on that, and you're here appealing that. Some would call that being a sore winner, okay? And then you win five out of six or six out of seven on the other storms. Again, sort of redolent of a sore winner. But the fundamental principle, it seems to me, that you're fighting for is that you shouldn't have lost on that one storm on the basis of the gerrymandering of the statute by including the word simultaneous. So my question to you would be, is there any way that the commission's decision could be supported, either by the commission itself or by us, without the use of the word simultaneous? In other words, could we affirm their decision on the July storm without putting the word simultaneous in our opinion? No. I don't see any way that you can do that without adding that word to the statute. And if you do that, the kind of absurd situation becomes real. And the absurdity of adding the word simultaneous is even worse than it comes out in the briefs, and let's just talk about that. And whenever you need me to sit down in Justice House, I will happily sit down, but I want to make sure I deal with this, because I think this is the fundamental point. Let me draw a picture. We have a storm that comes through northern Illinois, ComEd's territory. It hits Rockford first, 6 a.m. in the morning, knocks some power out for whatever the causes are. The power gets knocked out and lasts for 24 hours. That storm makes its way down interstate 90, comes across, hits Chicago. At noon, for some other cause, lightning may be here, wind may be there, whatever, the power goes out for people in Chicago. There is, on that day, at some point, a four-hour overlap when everybody's power is out. If you put the word simultaneous in the statute, which is in their brief, I counted 14 times, maybe it's more. Yeah, it was prominent. Put the word simultaneous once in the statute, let alone 14 times in the brief, and those two interruptions, or those thousands, really, of what they are, but those two scenarios, those are considered simultaneous interruptions. And it's even worse, because if in the reading of the statute that they are advancing to this court, if the Rockford outages were caused by an earthquake, by an elephant, by anything, as long as those interruptions overlap, and that's really the word they're using, as long as they overlap, they say the statute applies. Go ahead. Go ahead. Finish it up. I want to answer your questions. All right. Well, the question that I had related to the suggestion that both by staff and by the commission and its findings and in the argument of your colleagues here, that the statute would never, the eventuality called for in the statute would never occur, because you could never have a single interruption that would affect 30,000 people for four hours. What's your response to that? And I want to be as delicate as I can say this, but it's a false argument. And the reason it's false is it comes from the testimony of the commission's witness below, Mr. Rockford. And what his words on the record were, and I am, again, coming pretty close to a quote, but it's a little bit of a paraphrase. He says there's no situation where a single piece of distribution equipment could fail and cause an interruption of this magnitude. Now, distribution, think lines going to a house. Transmission, think those big lines we see when we're driving down the highway and see them in fields. There are plenty of instances where a single piece of transmission equipment could be knocked out and cause a problem like this. As a matter of fact, you had it. There was a witness. I saw this on the record. There was a witness for ComEd, Cheryl Maletich, I think at C-3308. There was in not the storm that you did get tagged for, but the storm before, July 30th to July 1, ComEd acknowledged that there were 26,524 customers without power due to one continuous interruption. So to say you can't get to 30, pretty close on that one storm. Absolutely. That's correct. And I think the largest one was in the 10 to 12 range for this July 11 storm. Yeah, 12, 12, 9, 89. The single piece argument, it's just wrong for another instance. We've all driven down the road, and you come along a fence, and you see the electrical equipment kind of sitting there like in a residential neighborhood. That's a substation. Substation has many pieces of equipment, not a single piece. If a substation gets knocked out, that's a set of interconnected pieces of equipment that are all together. That's not going to be a single piece of distribution equipment, but it's a single thing, discrete set of pieces of equipment, and if that gets knocked out, it could easily cause the 30,000 threshold to be met, as was the case. I think when we look back at the legislative history in the news reports, I think we saw 22,000, 29,000 were the numbers that were affected by single interruptions from the fires and so forth in the 1990s. Why the General Assembly picked 30,000 as opposed to 29,000 or 22,000, who knows? Except for them. It's pretty close. I don't want to target court's patience on how much time I spend up here. You know, the only other thing I would like you just, I think I know the answer to this, but I want to hear it from you. Your other appeal that's subject to the motion to dismiss, you're really arguing about the reasoning and not anything that affects your client's interests as far as this particular issue is concerned, and indeed that issue that you're trying to have revisited in that commission appeal on that other consolidated part of it is addressed within the appeal that there is no motion to dismiss on. So that's certainly true, and if you gave the relief on the July 11th storm, it would sort of move the other one, but there's that interstate water case from the Supreme Court. Yeah, not persuasive to me, but we're not goring anyone's ox big time if we grant that. I would agree with that 100% as long as you grant me the relief on the July 11th storm. He doesn't like to lose. He doesn't like to lose. I don't like the Mendoza line. I don't even know if he likes to win. He was actually a 217 hitter, so he's been unjustifiably labeled as an under 200 hitter. Fair enough. I prefer, in this case, closer to 1,000%. All right, you have a few minutes for rebuttal. Good morning. Good morning. Please, the court and counsel. As to the split on the time, I'm going to, I think Mr. Hamill took about 20 minutes, so I'm going to take about seven or eight minutes at our side, if that's okay with the court. And I'm going to focus solely on the issue of Comet's liability under Section 16-125E. My colleague, Mr. Keller, will focus on the waiver issue. And those issues, as the court has recognized, are separate and severable. This court can find that Comet was liable whether or not it's entitled to the waiver. Your Honors, during the summer of 2011, thousands of people went without power just three summers ago. They had to leave their homes. They had to abandon businesses. They suffered damages. And now Comet comes before this court with a very narrow and strained interpretation to claim it's not responsible in any way for a single dollar for any of this, to compensate tens of thousands of people who suffered, who were affected by electrical failure. The failure of the company's systems, wherever located in June and July of 2011, that's 911,000 people alone on July 11th, the date in question here. You seem to be making an equitable argument, Mr. Siegel. We're here for a statutory interpretation. Yes. Well, let me get to what's not right about the statutory interpretation. There's a total universe of 35,000 or so affected customers. The company hinges its total lack of liability on the purported ambiguity and complexity of the statute, and the nub of their interpretation doesn't stand up to logic or plain meaning analysis. Now, we've read in Comet's briefs, and we heard just a few minutes ago, counsel concede that we're in plain meaning analysis, and then a moment later he launched into industry standards and said legislative history, which you, as you correctly pointed out, Justice Epstein, none of which is relevant under the four corners of this statute. They assert the word interruption should be plural. And let me give you another absurd consequence. It's this, and I think you alluded to this, Justice Levin, or Justice Epstein, perhaps, an outage knocking out the air conditioning to thousands of people in one part of a city ward can't be taken into account with a power loss that leaves unrefrigerated food in hundreds of homes just a few blocks away because two different trees on two different adjacent or even parallel streets felled two different power lines in incapacitated different circuits in Comet's system from the same wind gust. That's the logical or really illogical fallacy here, the result of this cramp, narrow, and wrong interpretation that goes essentially tree by tree, wire by wire, and lightning strike by lightning strike, as the panel recognized. It's an overly technical, legalistic interpretation. It parses cause and effect essentially one branch at a time, and it loses all sight of consumers' rights. But, you know, it really doesn't matter as a matter of law or language whether we say interruption or interruptions. Comet says the meaning will be altered because repeated uses of the word interruption and the provision, and provisions are, of course, written consistently. This doesn't, it's immune to the statute on statutes. But it doesn't matter if the word appears six times or a dozen because the meaning doesn't change. And I want to bring this down to the level of the consumer, not the technical experts or the industry witnesses or whoever else was involved in the crafting of this legislation who didn't pass this legislation. Each person or municipality is affected by the interruption. It's that interruption that was felt in the house of the family in the record that had to move out because its son suffered from asthma and couldn't breathe in the heat. Now, this family might be experiencing perceiving interruptions for four hours or maybe they experienced interruption if first the power waned and then failed. Or it's the interruption or interruptions, however they see it, in Rolling Meadows. And that's where the power went out for several days, emergency responders. You brought up the question of equity, Justice Epstein, but emergency responders there were short-staffed. You're focusing on it. That's getting a little populist on us. Well, there are damages here, to be sure. And this is a remedial statute. And the responders in that town had to deal with downed wires and check on the ill and elderly at great expense. So to these consumers it doesn't matter. Right, but that consumer would be affected whether that consumer is one of ten consumers who gets affected or one of 40,000. And the reach of the statute wouldn't help that people if they were only one of ten people who got power loss because of it. So we're dealing with this statute, Mr. Siegel, and I think that's something that we're sort of not communicating very well back and forth on. Well, under the law, comment interpretation can't stand up to the statute on statutes, which recognizes that nouns and nouns are the same, plural or singular or vice versa. And on page six of comments reply brief, they're wrong about the statute on statutes. They say it's an absurd consequence will result if, again, the example in one suburb is considered with an outage in a different town even if from the same storm. And they keep on bringing in this imagery of far-flung locations across northern Illinois, putting aside the fact that thousands of people were without power in specific towns that, you know, have multiple circuits or substations where one border ends and the other begins. What does the statute of statutes say on adding words? I mean, you have a decision here by the commission that rather baldly, rather clearly, uses the word simultaneous. That's nowhere in 16125E. That is true. How is that appropriate? Well, I don't think that simultaneously is the concept. The concept that simultaneously addresses is that people were affected in different locations. It doesn't have anything to do with continuously. And, again, it goes back to this idea that each of these consumers is experiencing an interruption. But Mr. Hamill pointed out and does in his brief that the commission uses the word simultaneous or simultaneously 14 times. Interestingly, ComEd interposes the words single or singular 50 times alone in its opening brief. And I've lost count of how many times they used discrete. No, you're both very good. Both sides are very good with taking every inch. Nits have been picked. Yeah. Those words and concepts don't appear anywhere in Section 16125. They don't modify the word interruption. The word interruption does. I mean, what we have here is a bit of parsing, to use an old Clintonian word, that is going on. And on one side, you folks are saying, well, they can't win unless they use the word single in there. And the other side is saying, well, look at them. They're using simultaneous all the time. I mean, that's what we have to word fight with you. And, again, I would come back to what the Illinois Supreme Court said, or I haven't mentioned it before, but the question was about how the court. We do have to listen to them. Indeed. In the Toman case, which ComEd cites in page 7 of its reply brief, the court held that, again, equating plural and singular nouns doesn't change the meaning when you're talking about adding two propositions to a ballot. ComEd says, in this instance, we'll be manipulating the statute. But there was no manipulation in the Toman case. And there are many other instances when they are treated analogously. Ultimately, it doesn't really matter if the commission or this court regards a mass scale outage as one interruption or a series of interruptions or on a sliding scale, a combination of both, because, critically, I come back again to the point that ComEd has lost sight of the purpose of the statute, which is to protect consumers. They pay lip service to this idea. But only if they're one of at least 30,000 others. Correct. We have to get to that threshold. And that is where the waiver issue comes in. We're fighting the argument comes down to 26,000 or so trees and how those trees were maintained. McCauley will talk about that in a moment. What's the basis? Is he going to talk about the waiver issue? Yes. Okay. We'll get to that. So they've attached a very strained meaning with single and discrete after the fact word tinkering. A second point quickly I'd like to address with their argument is they say on page 7 of their reply brief that we favored a singular interpretation below. Now we've switched sides and now we're advocating plural. No. We're saying that they're the same. And that's not a new argument. And what we said exactly, this is on Essay Separate Appendix 15, and I think it's our recording our brief using it from page C4316 of the record. What we said was, quote, English grammar requires that each customer be subject to a continuous power interruption. Now that statement in the singular was purposeful and it was addressing an entirely different issue that, frankly, one would think helps ComEd. It has to do with the avoiding aggregation of minutes across many different hours to get to four hours. And I know that the word each in our formulation compels the use of the word singular, but the word each doesn't appear in the statute. So there's no opportunism here, ComEd's word. Just a final point. The Court lacks jurisdiction over the Winter case. As the Court has noted, this Court doesn't issue advisory opinions, so only the Summer case and the record from the Summer case is before this Court. And so we'd ask for a holding that recognizes that ComEd's liability was triggered under Section 16-125e, regardless of how this Court rules on the waiver issue, which my co-counsel will now address. Thank you. Good morning, Your Honors. I appreciate your letting us know that we could argue the motion. I had no intention, really, of doing that. I don't think it really requires a hell of a lot more argument at this point. I agree. I mean, I was supposed to be arguing about waiver, but one thing I want to mention is the simultaneous argument is really a case of no good deed goes unpunished  That was throughout our brief as we were discussing things and what was fair, and I don't remember that being in the Commission's order. What this was, if you look at the record, there was more than 911,000 people without power because of the storm. 600,000 of them were without power for more than four hours. And your last point at page 4545, the Commission states, staff's interpretation of 16125E, that that experienced a simultaneous preventable interruption. So it's staff, then adopted by the Commission, and then bandied about in the briefs. Right. It was a way, okay, as I was going past this, there were 600,000 that were out of power for four hours. There were 482,000 people that were out of power simultaneously at the same time, continuously for four hours. And the question was, in staff's mind, as it was trying to apply what this statute is, should you just stick with, you know, should it be simultaneous or can you take four-hour interruptions from all over? And staff thought it was fair to limit it to just when 30,000 people have their power interrupted and it continues for four hours, that's when the statute applies. And so that's all I'll really mention about that. Can you address the Mayschall issue that I was asking Mr. Hanwell about? I don't recall it in sufficient detail. The statute that we're arguing about here today says a waiver of the requirements of this subsection may be granted by the commission in instances in which a utility can show that the power interruption was a result of any one of the following causes and goes on. And then above that in the same statute, they used the word shall for a different provision. So my question, although your brief adopted the point of argument that Mr. Hanwell's brief introduced, which is that they were entitled to this waiver, the question of entitlement would seem to be reliant on interpreting may as shall. Right. So if you're asking do I think the commission has the power, the discretion to not grant a waiver, that's not something the commission considered, so I'd be going out on a limb to talk about it. But because the commission isn't trying to hurt the utility, it's trying to see what's a reasonable way of operating things. And people are out of electricity, is it something you can prevent? If you don't have a position on it, then just go on to something that you do. I most surely do not, Your Honor. Basically, what the commission concluded is they're generally following their vegetation program, right? But staff, Mr. Rockhor, who worked for utilities for more than 20 years, who ran a vegetation department and has been with the staff of the commission now for about another 13 years, differed with them on the one point, which is tree contact. And he said in his opinion, tree contacts are preventable, and to get the waiver you have to prove that something is unpreventable. So he went into a great deal of detail. I will admit to you that the commission's order is not a model of clarity as to how it wended its way to its conclusion, because they are right. In summarizing staff's testimony, which clearly does mention tree contact, that summary didn't make it into the order. And then when the commission got to the end, it said that it adopted staff's approach and its application. And it didn't really, there was nowhere in the order that it specifically finds that tree contacts are preventable. It just took a post-record data request where staff and the parties listed the total numbers that staff still believed to be preventable. And then the commission looked at that and made some more cuts in it and said, no, there's another 20 or so thousand people that we think that particular damage was preventable and ended up at the $34,599. Let me ask you the direct question then. Are we here because the commission did grant waivers in five, but did not grant the waiver in the sixth case, sixth summer storm? I believe so. Okay. What's the basis for granting, for not granting the waiver in the July 11th storm when waivers were granted in the others? What's the critical distinction that we ought to focus on to legitimize what the commission was doing? The commission found that there were 34,599 instances of consumer or customer outage that were preventable. Okay. And so that kept it above the 30,000 customer level. And does that then get to what you were just talking about a moment ago, that the order was not the paragon of clarity in terms of nailing it down to the tree issue there? Correct, because it didn't mention tree contact in the order. And $25 in the testimony, but not necessarily in the order itself. It said it accepted staff's position, and staff's position clearly was, and it was mentioned in the rebuttal and then it was mentioned in the cross-examination, that tree contact is preventable and staff gave its reasons and so on. And so the commission, in weighing the evidence, it didn't mention it and discuss it, but it did accept it. So what I'm saying is they did have a problem with whether there were sufficient findings, but the question is whether or not there's a sufficient path for this court to discern what the commission intended to do and why. And it's clear that it adopted staff's testimony. It adopted staff's standards. It found in the end that the company did not meet its standards with regard to maintenance, with regard to these certain outages. And let me ask you the question I asked your colleague. Can we write an opinion in this case affirming what the commission did without using the word simultaneous? And if so, how? I am fine with you writing simultaneous out. What it's going to do is tend to come up with more situations where they face liability. It was done as a limitation to say it all has to be something done at once. You can't be grabbing four-hour outages from all over that are due this term. They all have to be $30,000 at once. And so to answer your question, yes, I think you can write that out. Thank you, Your Honor. Thank you. Just offer a couple of quick thoughts in rebuttal. Justice Epstein, I was thinking about your question about May. It doesn't really seem to be in dispute, but since we're asking you to construe the statute, if we go down a road where May becomes discretionary, I think we're looking at a constitutional issue. We put a constitutional argument in the brief. It's something that I don't think the court needs to reach because there are ways that, frankly, rule in the way we're suggesting that doesn't take you there. But I think we would be in the world of a constitutional problem if it were May. So that's further thought on the word May. Because it would be granting discretion? No, because if the commission said no, we're not going to even entertain the waiver. We're going to take the most discretionary approach of the word May. You were hypothetical to me earlier. We just don't want to go there would be the hypothetical. We don't have to. We may. We may not. But that's they don't necessarily have to go there. We're not going to consider it because we don't feel like it and it's a Tuesday. They could say that under these circumstances they're not going to exercise their discretion for a number of wholly legitimate reasons. In which case we're in the discussion that we've been having that we say that those reasons don't exist on this record. I agree with that. Second thing in reply was this discussion on the statute of statutes. I really don't see how it comes into play here based on how we've read it under law. There's one other word. Justice Labin, you kept asking me or you asked me and you asked counsel about whether we were saying that the word single was in the statute. I said it's not. We're reading the statute for what it says. The word that is in the statute is continuous. And I think that word really jettisons, gets rid of the statute of statutes arguments and the arguments by the appellees on how to construe the statute. And let me tell you what I would think that the decision we're advocating for would read like, particularly on the word continuous. I would think it would read like this. English grammar requires that each customer be subjected to a continuous power interruption. And what I'm reading a is in italics, a continuous power interruption. Otherwise, if the plural were used, quote, subject to continuous power interruptions, the statute would be internally inconsistent because a continuous power outage experienced by a customer cannot mean more than one power outage or it would not be continuous. I couldn't agree with that more. That's the attorney general's words. But that could be related to an individual who is aggregated among the 30,000 customers. And that's why I don't think it's as clear as you argue it to be. I think we're talking about models of clarity. Obviously, this statute is not something anyone's going to hold up as a paragon of great clarity or it wouldn't be having this argument here today. But I don't think your argument is a clincher on that issue because it could just as easily apply to deciding whether an individual should be aggregated within the group of 30,000 plus. Two last things. Sure. It's not a gotcha point. Right? You quote somebody's brief to them in a brief and it sounds like it's a debater's point. That's not the point. The point is we're trying to apply the principles of statutory interpretation. And whether we're talking about each customer, your question and what Mr. Siegel said when he was up here a few minutes ago, or we're talking about interruption, the point of the passage is the statute has to be interpreted as it's written. It's written in the singular. That's why that passage matters. It's something that I think is correct. It applies whether it's a customer or interruption. Two, and bear with me on this, but I actually think this statute is clear. I don't think it could be clearer on the fact that we're talking about a single interruption. And I do get to the other tools of statutory interpretation, you know, the legislative history and all that, but we never need to get there because I think when the singular is used, the singular is meant to be used and we can't throw in last-minute devices like the statute on statutes to try to change what that meaning is. That's all I have to say unless the Court has any other questions. He's out of power. Thank you all for a very well-presented argument both in the briefs and orally here today. The case will be taken under advisement. A decision will be issued in due course.